IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:22-CV-5-FL

| | | |
|---|---|---|
| DONNIE SARDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings. (DE 16, 18). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, issued a memorandum and recommendation ("M&R") (DE 21), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm the final decision by defendant. Plaintiff timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For the following reasons, the court the court adopts in part and rejects in part the M&R, grants plaintiff's motion, denies defendant's motion, and remands this case to defendant for further proceedings.

## BACKGROUND

On February 4, 2016, and April 21, 2016, plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning September 22, 2015. The applications were denied initially and upon reconsideration. A first hearing was held on July 23, 2018, before an administrative law judge ("ALJ") who

determined that plaintiff was not disabled in an initial decision dated November 29, 2018. On January 13, 2020, the appeals council remanded to the ALJ for consideration of additional medical records received in October 2018. On May 12, 2020, the ALJ held a second hearing after which she determined again that plaintiff was not disabled in decision dated July 14, 2020. On July 8, 2021, the appeals council denied plaintiff's request for review, making defendant's decision final with respect to plaintiff's claims. Plaintiff commenced the instant action January 7, 2022, seeking judicial review of defendant's decision.

**DISCUSSION**

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).[1] The standard is met by "more than a mere scintilla of evidence . . . but less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review . . . is a record of the basis for the ALJ's ruling, which should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must

---

[1]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

2

"include a narrative discussion describing how the evidence supports each conclusion," Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), and an ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016).

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition" of motions for judgment on the pleadings. 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medial impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P [the "Listings"]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

3

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the social security claimant during the first four steps of the inquiry, but shifts to defendant at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 22, 2015. At step two, the ALJ found that plaintiff had the following severe impairments: cervical spine and lumbar degenerative disc disease (DDD), osteoarthritis (OA) of the left hand, fibromyalgia syndrome (FMS) versus seronegative rheumatoid arthritis (RA), and obesity. However, at step three, the ALJ determined that these impairments were not severe enough to meet or, either individually or in combination, medically equal one of the listed impairments in the regulations.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations:

> [O]ccasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; bilateral overhead reaching is occasional; avoid: work at heights, work with dangerous machinery and dangerous tools, constant vibration, constant temperatures over 90°F and under 40°F, concentrated exposure to pulmonary irritants (i.e., dust, gases, odors, chemicals), and foot controls.

(Tr. 82). At step four, the ALJ concluded that plaintiff is capable of performing past relevant work as a general merchandise salesperson. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.      Analysis

Plaintiff argues that remand is required because the ALJ failed to adequately explain conflicts in the evidence bearing upon plaintiff's RFC, pertaining to plaintiff's use of a cane and walker, as well as decreased range of motion and grip strength in her hands. While this presents a

close case under the applicable standard of review, the court agrees with plaintiff that remand is required pertaining to plaintiff's use of a cane and walker, but not on the issue of decreased range of motion and grip strength in her hands.

In making a disability determination, the ALJ must "assess [a claimant's] residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Such an "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." Monroe, 826 F.3d at 187. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Id. "Remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636.

With these principles in mind, the court addresses in turn the ALJ's treatment of evidence regarding plaintiff's need for a cane and walker, and plaintiff's reduced range of motion and grip strength.

1. Cane and Walker

A documented medical need for a "hand-held assistive device (such as a cane)" may "limit the use of . . . upper extremities," one of the functional criteria in the Listings. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00C.6.d (effective July 18, 2022). "Hand-held assistive devices include walkers, canes, or crutches, which you hold onto with your hand(s) to support or aid you in walking." Id. "Wheeled and seated mobility devices are assistive devices that you use in a seated position, such as manual wheelchairs, motorized wheelchairs, rollators, and power operated

5

vehicles." Id. § 1.00C.6.e. "If you use a wheeled and seated mobility device that involves the use of both hands, then the need for the assistive device limits the use of both upper extremities." Id.

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9P 1996 WL 374185 (July 2, 1996). "For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." Id. By contrast, "the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded." Id. "In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work." Id.

When used in these regulations, the phrase "documented medical need" means "there is evidence from a medical source that supports [the claimant's] medical need for an assistive device for a continuous period of at least 12 months." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00C.6.a. "This evidence must describe any limitation(s) in [the claimant's] upper or lower extremity functioning and the circumstances for which [she] need[s] to use the assistive device." Id. The regulations "do not require that you [a claimant have] a specific prescription for the assistive device." Id.

In this case, while the ALJ addresses to some extent plaintiff's need for use of a cane and a walker, there is contradictory evidence in the record that is not explained, and other inadequacies

6

Case 7:22-cv-00005-FL   Document 26   Filed 03/27/23   Page 6 of 14

in the analysis by the ALJ frustrate meaningful review. For example, the ALJ recognized plaintiff's testimony at initial hearing that she "uses a cane when in the home due to balance problems," but the ALJ concludes that "the record does not indicate that it was medically necessary or prescribed." (Tr. 90). Following this conclusion, the ALJ cites to evidence that a "[m]usculoskeletal review indicated . . . normal gait without use of assistive device," citing only to an office visit with Lajada Claiborne, ARNP, on November 7, 2017. (Tr. 948-951).

This explanation is lacking where it does not address the significance of evidence of plaintiff's physical examination, assessments, and treatment, by plaintiff's treating physician, Jose Sosa, M.D. ("Sosa"), in December 2018. In particular, in notes of an examination on December 26, 2018, Sosa states that plaintiff walked with an "antalgic gait," and with "motor strength decreased at lower extremities." (Tr. 1251). He diagnosed her with "[f]ibromyalgia . . . polyarthralgia . . . chronic pain [and] . . . [u]nstable gait," about which he noted she "uses walking cane due to polyarthralgia and weakness from chronic pain." (Id.). He further noted plaintiff requested a "Walker with Seat Attached." (Id.). Under the heading of "Treatment," for each those four separate diagnoses, he states: "Referral To: Medical-Care & Equip RESPITEC DME Reason: ROLLATOR WITH SEAT ATTACHED." (Tr. 1251-1252).

The ALJ does not discuss this evidence of treatment in her conclusion regarding the medical necessity or prescription for a cane and walker. While the ALJ describes the December 2018 office visit in recounting the evidence in the record, this description is inadequate in several respects. First, the ALJ only notes that plaintiff "<u>requested</u> a seated walker," without taking into account the more significant information from the December 2018 office visit that Sosa <u>directed treatment</u> for each of plaintiff's diagnosed physical conditions, comprising a referral for a durable

7

medical equipment in the form of a "rollator[2] with seat attached." (Tr. 1251-1252). Second, the ALJ does not take into account Sosa's "<u>assessment[]</u>" that plaintiff uses a cane "<u>due to</u> polyarthralgias and weakness from chronic pain" with "Gait [that] is slow and antalgic." (Tr. 1251) (emphasis added).

As such, it is unclear from the ALJs decision whether the ALJ considered this to be "evidence from a medical source that supports [the claimant's] medical need for an assistive device for a continuous period of at least 12 months." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00C.6.a. Likewise, it is not clear whether the ALJ considered Sosa's assessment of plaintiff's use of a cane for "walking" to be no more than what would be needed for "prolonged ambulation, walking on uneven terrain, or ascending or descending slopes," as opposed to "use [of] such a device for balance because of significant involvement of both lower extremities (e.g., because of a <u>neurological impairment</u>)." SSR 96-9P (emphasis added).

Additional evidence in the record regarding plaintiff's use of a cane during medical examinations further precludes meaningful review of the ALJ's decision. For instance, treating physician Gualberto Oquendo-Roman, M.D., ("Oquendo-Roman"), determined, upon examination of plaintiff on May 3, 2018, that she walked with "slow short steps" and used an "Assistive device: one point cane." (Tr. 883). This examination note was in conjunction with diagnoses of fibromyalgia, cervicalgia, polyarthritis, and it was separate from a description of plaintiff's "history of present illness," stating that plaintiff reported "us[ing] a cane for balance and fall prevention." (<u>Id.</u>). While the ALJ describes these notes as showing that "claimant [was] using a cane for balance," the decision does not address the physician's assessment of her gait while using a cane upon examination, nor why this is insufficient to show that a cane was medically

---

[2]   As noted previously, according to the Listings, a rollator is a type of "wheeled and seated mobility device." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §1.00C.6.e

8

necessary. Where plaintiff was using a cane for balance, consistent with examinations by both doctors Sosa and Oquendo-Roman, in conjunction with a diagnosis of fibromyalgia, this may show plaintiff was medically required to use "such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment)." SSR 96-9P. As such, plaintiff's "occupational base . . . may be significantly eroded." Id.[3]

Accordingly, the ALJ's decision fails to address adequately this contradictory evidence in the record to enable meaningful review. Defendant nonetheless urges the court to affirm the ALJ's decision on the basis that Dr. Sosa's treatment notes "are not a prescription," and "even if they were, the absence of any documentation of the necessity of the assistive device or under what circumstances Plaintiff should use it cause the notes to fall short of the required showing." (Def's Mem. (DE 19) at 7). This argument is unavailing for two reasons. First, it invites the court to weigh, in the first instance, the meaning of the of the "examination," "assessments" and "treatment" set forth in Dr. Sosa's treatment notes. (Tr. 1251). This is not the within the province of the court to undertake; instead, the court's analysis focuses on whether the ALJ's own explanation of the evidence allows for "meaningful review." Mascio, 780 F.3d at 636. Second, defendant's own interpretation of Dr. Sosa's treatment notes is a "post-hoc rationalization" for

---

[3] There are numerous additional references to plaintiff's use of a cane and walker in her medical records. (E.g., Tr. 819 ("The patient uses cane as assistive device"); 822 (noting upon physical examination, "single prong cane used"); 841 ("uses a cane for ambulation"); 852 (self-report); 993 ("Ambulates up to 1 city block with straight cane"); 1003, 1008, 1152, 1164, 1170, 1176, 1196, 1322, 1342, 1362, 1366, 1375, 1404 (same); 1138, 1144, 1322 ("Ambulates up to 1 city block with walker"); 1043 ("planning to use a wheelchair or cane at home"). Some of these additional references, alone in themselves, may not provide a basis for remand, where they only describe self-reports of cane usage or plaintiff's presentation with a cane before a medical provider. See Emanuel v. Saul, No. 7:19-CV-202-FL, 2021 WL 1217309, at *3 (E.D.N.C. Mar. 31, 2021). Nevertheless, when considered in conjunction with the examination notes of doctors Sosa and Oquendo-Roman, these references to plaintiff's use of a cane further support a determination that remand is required under the circumstances of this case.

9

discounting them, which the ALJ does not express in the first instance. Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 109 (4th Cir. 2020).[4]

In addition, defendant relies upon the ALJ's reference to a September 2016 consultative examination, in which the examiner opined plaintiff could stand and/or walk for a total of 6 hours in an 8-hour workday. (See Tr. 89, 193). This reference is insufficient to correct the foregoing deficiencies in explanation for several reasons. First, the ALJ does not describe the consultative examination as one addressing the requirement of a cane or walker. Second, the consultative examination only reviews records through the date of the evaluation, in 2016, whereas the foregoing evidence pertains primarily to the time period from 2018 to the date of the ALJ's decision. Third, even assuming the consultative examination may provide some evidence regarding plaintiff's need for a cane or walker, the ALJ's reference to it is not sufficient in itself to "build an accurate and logical bridge from the evidence to [the ALJ's] conclusion" regarding usage of a cane or walker. Monroe, 826 F.3d at 189.

Defendant cites several unpublished district court cases holding that a plaintiff failed to show that she used a cane or that it was medically required. One such case is distinguishable, however, because it did not apply the standard that "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636; see Eason v. Astrue, No. 2:07-CV-00030-FL, 2008 WL 4108084, at *5

---

[4] The court departs in these respects from the reasoning in the M&R, where the M&R determined the reference to a "rollator" walker "is contained with the progress notes from [plaintiff's] mental health provider," and "[a]t her request, it is a referral, not a prescription, for medical equipment" that "sets forth no circumstances for its use." (M&R (DE 21) at 14). Neither the ALJ's decision nor the record itself states definitively whether the referral for a rollator was a prescription, and the court leaves for defendant to determine on remand the weight to be given to the information in the progress notes by Dr. Sosa.

10

(E.D.N.C. Aug. 29, 2008) (affirming ALJ decision, noting "the record is not entirely clear with respect to how frequently or how consistently plaintiff is required to use her cane").

Other cases cited are distinguishable because they do not involve the same type of evidence regarding a plaintiff's usage of a cane or referral for a walker. See, e.g., Emanuel v. Saul, No. 7:19-CV-202-FL, 2021 WL 1217309, at *3 (E.D.N.C. Mar. 31, 2021) (finding ALJ's error in miscounting references to a cane in the record harmless, where "these mentions are traceable to [plaintiff's] self-reports and to physicians' observations that he presented with an assistive device") (emphasis in original); Timmons v. Colvin, No. 3:12CV609, 2013 WL 4775131, at *8-9 (W.D.N.C. Sept. 5, 2013) (holding that "neither the prescription nor other evidence shows how Plaintiff actually uses the cane, or that it is medically required," but remanding on other grounds and advising plaintiff "to present appropriate evidence, if available, regarding the necessity of her cane"). More comparable, for example, are the courts' decisions in Smith v. Saul, No. 5:18-CV-00282-FL, 2019 WL 5800086, at *9 (E.D.N.C. July 16, 2019), where the court determined that the ALJ's "lack of discussion on [a physician's] opinion about the use of a cane warrants remand"; and in Fletcher v. Colvin, No. 1:14-CV-380, 2015 WL 4506699, at *9 (M.D.N.C. July 23, 2015) where the court determined that "the ALJ repeatedly mentioned Plaintiff's use of a walker," but "the ALJ never addressed whether the walker was medically necessary or explicitly reconciled the conflicting evidence on this issue so that this Court can properly review the matter."

While these are subtle distinctions in the case precedents, particularly where the United States Court of Appeals for the Fourth Circuit has not addressed standards for taking into account use of a cane in an RFC determination, remand nonetheless is appropriate here because of unexplained conflicts in the evidence and other factors that frustrate meaningful review.

11

2. Range of Motion and Grip Strength

In contrast to the foregoing, the magistrate judge correctly determined that plaintiff failed to demonstrate that she has greater limitations with her upper extremities than the RFC reflects. Plaintiff has not pointed to evidence in the record that the ALJ failed to address that supports a greater limitation, nor has plaintiff pointed to conflicts in the evidence that the ALJ failed to explain regarding decreased range of motion and grip strength in her hands. The court accordingly adopts that part of the M&R pertaining to upper extremity limitations. (See M&R (DE 21) at 14-15).

Functional criteria pertaining to the use of upper extremities include use of "wrists, hands, and fingers," with "fine movements" that "include picking, pinching, manipulating, and fingering," and "gross movements" that "include handling, gripping, grasping, holding, turning, and reaching." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 1.00E.3.a. "Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs." SSR 85-15, 1985 WL 56857 at * 7. "Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do." Id.

In this case, the ALJ determined that plaintiff had a RFC for light work, with an upper extremity limitation to occasional "bilateral overhead reaching." (Tr. 82). In explaining this limitation, the ALJ noted "[o]verhead reaching is significantly reduced to address pain in the upper extremities and hand pain referenced by claimant." (Tr. 83). The ALJ further explained that "[a]ny problems with the hands are addressed with the RFC through light work, reduced overhead reaching, and precluding temperature extremes, which can exacerbate pain. Evidence does not support further limitations." (Tr. 80).

12

Plaintiff cites to limited references in the medical record regarding issues with her hands and upper extremities. For example, plaintiff cites to examination notes in June 2018, finding "[t]enderness on the PIPs, MCPs bilaterally," in conjunction with assessments of polyarthritis, fibromyalgia, and cervicalgia. (Tr. 877). Examination in June 2019 found "PIPJ tenderness" in hands, with "[r]educed hand grip bilaterally," and "wrist tenderness bilaterally," along with assessments of arthritis, fibromyalgia, and joint pain. (Tr. 1430-1431). In December 2019, plaintiff presented to a specialist with "pain left [Middle Finger] triggering," but she "denie[d] any other loss of motion or strength in either upper extremity," and on examination range of motion was normal and bilateral grip strengths were normal. (TR. 1100).

The ALJ explained the weight given to this evidence both in her summary assessment of manipulative limitations and in detailed description of the evidence bearing on such limitations. For example, the ALJ explains:

> Claimant testified to having carpal tunnel syndrome (CTS) in her hands, and that she can only lift a bottle of water. Handgrips had reduced strength, but the wrists had normal range of motion without swelling or tenderness. (EX 29F/2) She reported shoulder pain, but had normal range of motion and no swelling on exam. (Id.) Wrists and hands had normal range of motion and strength bilaterally. (Ex. 28F/155). Earlier notes show hand pain was mildly achy. There was no swelling, numbness, or loss of motion or strength in the upper extremities at any time, bilateral grips and pinches were normal. Fingers on the left hand had limited range or motion, but intact sensation. She was instructed on home exercises, and given injections for a left middle finger trigger finger. (Ex. 26F/2-3).

(Tr. 80). The ALJ further accurately described examination notes bearing on plaintiff's hand and upper extremity symptoms. (Tr. 86, 88).

In sum, the ALJ "satisfactorily explain[ed] [her] decision to partly discredit [plaintiff's] testimony regarding the symptoms and functional limitations resulting from [her] impairments," and provided "the specific analysis that would allow for meaningful review." Monroe, 826 F.3d at 189. Where the weight of the evidence is for the ALJ to decide, see Craig, 76 F.3d at 589,

13

remand on the issue of decreased range of motion and grip strength in plaintiff's hands is not required.

## CONCLUSION

Based on the foregoing, the court ADOPTS IN PART and REJECTS IN PART the M&R. Plaintiff's motion for judgment on the pleadings (DE 16) is GRANTED on the basis set forth herein, and defendant's motion for judgment on the pleadings (DE 18) is DENIED. This matter is REMANDED to defendant pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order. The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of March, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge